# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TONI LEE CAVANAGH, ESQUIRE,** | : | CIVIL ACTION |
| **DENISE McCRAE, ESQUIRE,** | : | |
| **NICHOLENA RUSHTON, ESQUIRE**, | : | NO. _____ |
| Individuals, by and on behalf of | : | |
| themselves and all persons similarly | : | |
| situated | : | COLLECTIVE AND CLASS ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| **COUNTY OF DELAWARE** | : | JURY TRIAL DEMANDED |
| | : | |
| Defendant. | : | |

## CIVIL ACTION COMPLAINT

Plaintiffs, by and through counsel, hereby complain as follows against Defendant

County of Delaware:

## I.     PRELIMINARY STATEMENT

Plaintiffs Toni Lee Cavanagh, Esquire, Denise McCrae, Esquire, Nicholena

Rushton, Esquire, individually and on behalf of all other women who are or were employed

by Delaware County's Public Defender's Office ("PDO"), worked for Defendant as

attorneys and were consistently paid less money than their male counterparts who also were

employed by Defendant's PDO.  Defendant's PDO has paid to its non-supervisory female

attorneys at rates less than the rates paid to male attorneys in the same workplace for

substantially equal work for jobs the performance of which require and required equal skill, effort, and responsibility and which were performed under similar working conditions. This gender-based pay disparity maintained by Defendant remained extant even though the job performance of Plaintiffs and similarly-situated female attorneys has been superior to or the same as their male counterparts.

Defendant's PDO claims it "is committed to providing and promoting quality legal representation for indigent adults and children facing the loss of their rights, liberty and dignity." Through its public defenders, Defendant strives to provide equal justice for marginalized communities. Defendant's public defenders all are expected to provide zealous advocacy for the thousands of clients it represents yearly. Despite its lofty mission and goals, Defendant has not respected and valued its female attorneys as much as its male attorneys. In undertaking here to rectify the injustices and inequalities to which Defendant has subjected its female attorneys, Plaintiffs allege the following.

## II.   **NATURE OF THE ACTION**

1.   This collective action and class action is brought by Plaintiffs on behalf of themselves and all other similarly-situated female attorneys currently and formerly employed by the Defendant for violations of the (a) Equal Pay Act ("EPA"), 29 U.S.C. § 206(d) *et seq.*, (b) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), (c) 42 U.S.C. § 1983 to redress the deprivation under color of State law of equal protection rights secured by the 14th Amendment to the United States Constitution ("Equal Protection"), (d) Pennsylvania Human Relations Act ("PHRA"), 43

P.S. § 951 *et seq.*, and (e) Pennsylvania Equal Pay Law, 43 P.S. § 336 ("PEPL"). Defendant has discriminated against Plaintiffs and the collective action members and class action members they seek to represent by paying female attorneys in the PDO less than male attorneys for substantially equal work, denying them equal support, development and advancement on the basis of their sex, discriminating against them in other terms and conditions of employment enjoyed by male attorneys employed by the PDO, and denying them the equal protection of the laws under the United States Constitution.

2.      This action addresses how Defendant's PDO perpetuated a gender pay gap between male and female attorneys employed by it and fostered discriminatory practices on the basis of sex.  This lawsuit seeks an end to the PDO's discriminatory practices and denial of the equal protection of the laws, and to make whole Plaintiffs and the class action members and collective action members they represent, as well as provide for liquidated and punitive damages and all other appropriate relief including but not limited to compensatory damages, emotional pain, distress, anguish and suffering, anxiety, ridicule, humiliation, inconvenience, loss of enjoyment of life, injury to professional standing, injury to character and reputation, indignity, apprehension, loss of self-esteem and other non-pecuniary losses.

## III.    **PARTIES**

3.      Plaintiff, Toni Lee Cavanagh is a female and practicing attorney who resides in Delaware County, PA.  During times relevant to this lawsuit, Attorney Cavanagh has been

employed by the Delaware County PDO and was an "employee" of Defendant as that term is used in the EPA, Title VII, PHRA and the PEPL.

4.     Plaintiff, Denise McCrae is a female and practicing attorney who resides in Delaware County, PA.  During times relevant to this lawsuit, Attorney McCrae has been employed by the Delaware County PDO and was an "employee" of Defendant as that term is used in the EPA, Title VII, PHRA and the PEPL.

5.     Plaintiff, Nicholena Rushton, is a female and practicing attorney who resides in Delaware County, PA.  During times relevant to this lawsuit, Attorney Rushton has been employed by the Delaware County PDO and was an "employee" of Defendant as that term is used in the EPA, Title VII, PHRA and the PEPL.

6.     The County of Delaware ("County") is one of the Commonwealth of Pennsylvania's 67 counties.  The County is governed by a five-member County Council.  Members of the County Council are elected on an at-large basis to four-year terms at staggered two-year intervals when Municipal elections are held, which occur in odd numbered years.

7.     In accordance with the Constitution of Pennsylvania, the County appoints a Public Defender.   The PDO provides legal defense in the criminal, juvenile, delinquency, domestic and mental health systems in the County for eligible persons.

8.     At all times relevant hereto, the PDO has been managed, administered and overseen by an appointed Director who served at the pleasure of the County.  At all times relevant hereto, the Director and those acting on his behalf were acting under color of State law.

9.     At all times relevant hereto, the PDO acted through its several agents, servants, and employees (including but not limited to those named elsewhere in this Complaint), each of

whom acted in the course and scope of their employment.  The County and the PDO are therefore fully responsible for the unlawful acts and omissions of the aforesaid employees pursuant to the principle of *respondent superior*.

10.     At all times relevant hereto, the PDO employed more than 70 people including, but not limited to Plaintiffs and all other current and former attorneys of the Office.

11.     At all times relevant hereto, the County is an entity with the capacity to sue and be sued and is an "employer" as that term is used in the EPA, Title VII, PHRA and the PEPL.


IV.     **JURISDICTION AND VENUE**

12.     This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this State and this Judicial District are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

13.     The United States District Court for the Eastern District of Pennsylvania has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights under Title VII, the Equal Protection clause of the United States Constitution and the EPA.  This Court also may maintain supplemental jurisdiction over the State law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 8(a) of the Federal Rules of Civil Procedure because they are sufficiently related to the claims within this Court's original jurisdiction that they form part of the same case or controversy.

14.     Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(2) and because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district and Defendant is subject to personal jurisdiction in the Eastern District of Pennsylvania.

## V.     PROCEDURAL REQUIREMENTS

15.     Plaintiffs have exhausted all of the procedural and administrative requirements for proceeding with their claims of employment discrimination and denial of equal pay.

16.     Plaintiffs timely filed charges of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") (assigned Charge Nos. 530-2021-03986, 530-2021-03990 and 530-2021-03991), and the Pennsylvania Human Relations Commission.

17.     On May 13, 2022, fewer than 90 days prior to the filing of this Complaint, the EEOC issued each Plaintiff/Complainant a Notice of Right to Sue with respect to each Plaintiff's charges.

## VI.     FACTUAL ALLEGATIONS

18.     Plaintiffs and similarly-situated female attorneys employed by the PDO as Assistant Public Defenders were paid less as compared to male Assistant Public Defenders with the same non-managerial positions, requiring substantially equal skill, effort and responsibility under similar working conditions in the same establishments, and including such things as, but not limited to: "excellent organizational and communication skills, commitment to public service, strong work ethic and the ability to manage a demanding workload."

19.    The PDO has specified some of the job duties performed by Assistant Public Defenders as:   "providing legal representation, consulting and advising clients, representing clients during criminal investigative proceedings, conducting legal research, interviewing clients and witnesses, maintaining client contact, preparing case strategies and defenses, drafting motions, pleadings and briefs, appearing at scheduled court hearings, litigating pretrial motions, negotiating plea bargains, attending sentencing proceedings . . . . and complying with all Pennsylvania Rules of Professional conduct."

20.    Similarly, the PDO describes the essential duties of the Assistant Public Defenders as follows:   "Under the general oversight of the Public Defender and First Assistant, an Assistant Defender is responsible for every aspect of litigation in the criminal, delinquency and mental health systems, including, but not limited to:

●  Direct personal consultation with defender clients from inception of the legal proceedings through their completion.

●  The preparation of persuasive legal arguments to advocate for their client's interest at each stage of the legal proceedings.

●  Overseeing the discovery, collection and presentation of all facts that support clients interest at each stage of the legal proceedings.

●  Engaging in holistic representation practices that attempt to assist the client in collateral matters that impact the direct legal representation of the client.

●  Working within the organization to advocate for structural changes that will benefit the interest of public defender clients.

●  Perform related work, at the request of the Defender or First Assistant, when necessary."

21.    The County's PDO is the common employer of Plaintiffs, those similarly-situated and their male counterparts.  This includes, for example, selecting and hiring attorneys as

employees; setting salary levels and providing PDO attorneys with their pay; assigning them to clients; evaluating their performance; and, making promotions.

22.    Plaintiffs and those whom they seek to represent in this lawsuit are required by the PDO to perform and have performed the same job duties that require equal skill, effort and responsibilities performed under similar working conditions as male attorneys.

23.    Beginning at least as early as 2000 and continuously thereafter, female attorneys employed by the PDO have been paid less for comparable services than the PDO male attorneys.

24.    On or about August 20, 2020, the Pennsylvania Labor Relations Board ("PLRB") certified the United Auto Workers International Union ("Union") as the bargaining unit representative of 44 staff attorneys in the PDO. (Case Nos. PERA-C-20-271-E and PERA C-20-273E).

25.    Thereafter, at the request of the Union, the PDO provided the Union with wage information for bargaining unit members. **By virtue of the wage information disclosed to the Union by Defendant in 2021, Plaintiffs first learned of the substantial systematic wage disparity between various female and male attorneys, including Plaintiffs.**

        *A.    Plaintiffs' Respective Employment Backgrounds*

26.    <u>Attorney Cavanagh</u> received her juris doctor degree in 1995 from Widener University School of Law and an LL.M. in taxation from the Temple University School of Law in 2001.  After engaging in private practice between 1996-2002 and serving as a federal judicial law clerk to the Honorable Judge R. Barclay Surrick from November 2002 to August 2003, she was hired in 2004 as an Assistant Public Defender by the PDO at a

staring annual salary of $27,500.00. As of 2011, her annual salary had increased to $42,289.20. At the time of her filing her Charge with the EEOC in 2021, Attorney Cavanagh's annual salary was $52,560.97.

27.     At the time of her hire as an attorney by the PDO, and during her tenure in that position, she was well-qualified for the work duties and performed those duties of the position as described above.

28.     As detailed herein, Defendant, without basis or justification, paid Attorney Cavanagh substantially less than numerous male counterparts employed by the PDO. Attorney Cavanagh was underpaid her annual salary as compared to numerous male attorneys in the same establishment who performed the same or substantially similar work, the performance of which required equal skill, effort, and responsibility, and which were performed under similar working conditions.

29.     Attorney McCrae was hired in 2003 as an Assistant Defender-Criminal Defense by the PDO at a staring annual salary of $39,300.00. As of 2011, her annual salary had increased to $50,295.18. At the time of her filing her Charge with the EEOC in 2021, Attorney McCrae's annual salary was $62,511.57. Thereafter, she retired from the PDO.

30.     At the time of her hire as an attorney by the PDO, and during her tenure in that position, she was well-qualified for the work duties and performed those of the position as described above.

31.     As detailed herein, Defendant, without basis or justification, paid Attorney McCrae substantially less than numerous male counterparts employed by the PDO, including but not limited to former male attorneys Skip DiMatteo, Frank Zarilli, Ray Williams, Robert

D'Agostino, David Taggert and Dan Finnegan.   Attorney McCrae was underpaid her annual salary as compared to numerous male attorneys in the same establishment who performed the same or substantially similar work, the performance of which required equal skill, effort, and responsibility, and which were performed under similar working conditions.

32.     Attorney Rushton received her juris doctor degree in 1999 from Widener University School.  Attorney Rushton was hired in 2001 at a starting salary of $24,000 to early as an Assistant Defender-Criminal Defense.  In about late 2003 to early 2004, she was moved to the trial team and later was passed over for team leader for the more junior Davis Daniel, David Iannucci, Jeff Bauer, Baltazar Rubio, Steve Deavor, Robert Lodge, Denis Leonard, Howard Anmuth and Max Orenstein.   As of 2011, her annual salary had increased to $43,062.36.

33.     Plaintiff Rushton questioned PDO Director Doug Roger why she was not being promoted to team leader to which he responded to the effect of why would she want to be a team leader because of her eventually wanting a family.   At the time of her filing her Charge with the EEOC in 2021, Attorney Rushton's annual salary was $53,758.39.

34.     At the time of her hire as an attorney by the PDO, and during her tenure in that position, she was well-qualified for the work duties and performed the duties of the position as described above.

35.     As detailed herein, Defendant, without basis or justification, paid Attorney Rushton substantially less than numerous male counterparts employed by the PDO.   Attorney Rushton was underpaid her annual salary as compared to numerous male attorneys in the

same establishment who performed the same or substantially similar work, the performance of which required equal skill, effort, and responsibility, and which were performed under similar working conditions.

### B.   *Other Examples of Female Attorneys Paid Less Than Male Comparator Attorneys[1]*

36.   Attorney Melissa Wright is female and a member of a protected class, as recognized by Title VII.  Attorney Wright was hired by the PDO in 2003 at a starting annual salary of $33,999.94.  As of 2011, her annual salary had increased to $43,611.12.  In 2021 she was being paid $55,550.00.

37.   At the time of her hire as an attorney by the PDO, and during her tenure in that position, she was well-qualified for her work duties and performed those duties as described above.  Upon information and belief, Defendant, without basis or justification, paid Attorney Wright substantially less than numerous male counterparts employed by the PDO.

38.   Attorney Wright was underpaid her annual salary as compared to numerous male attorneys in the same establishment who performed the same or substantially similar work, the performance of which required equal skill, effort, and responsibility, and which were performed under similar working conditions.

---

[1] Additional information regarding female attorneys employed by the PDO is expected to be obtained during the discovery process.

39.    Attorney Dawn Sutphin is female and a member of a protected class, as recognized by Title VII.  Attorney Sutphin was hired by the PDO in 2012 at a starting annual salary of $33,999.94.  In 2021 she was being paid $43,006.72.

40.    At the time of her hire as an attorney by the PDO, and during her tenure in that position, she was well-qualified for her work duties and performed those duties as described above.  Upon information and belief, Defendant, without basis or justification, paid Attorney Sutphin substantially less than numerous male counterparts employed by the PDO.

41.    Attorney Sutphin was underpaid her annual salary as compared to numerous male attorneys in the same establishment who performed the same or substantially similar work, the performance of which required equal skill, effort, and responsibility, and which were performed under similar working conditions.

42.    Attorney Melina Micich is female and a member of a protected class, as recognized by Title VII.  Attorney Micich was hired by the PDO in 2016 at a starting annual salary of $13,195.00 and increased to $30,000 in October 2016.  In 2021, she was being paid $48,217.91.

43.    At the time of her hire as an attorney by the PDO, and during her tenure in that position, she was well-qualified for her work duties and performed those duties as described above.  Upon information and belief, Defendant, without basis or justification, paid Attorney Micich substantially less than numerous male counterparts employed by the PDO.

44.    Attorney Micich was underpaid her annual salary as compared to numerous male attorneys in the same establishment who performed the same or substantially similar work, the performance of which required equal skill, effort, and responsibility, and which were performed under similar working conditions.

45.    Attorney Maureen Keates is female and a member of a protected class, as recognized by Title VII.  Attorney Keates was hired by the PDO in 2018 at a starting annual salary of $37,000.  In 2021 she was being paid $40,400.00.

46.    At the time of her hire as an attorney by the PDO, and during her tenure in that position, she was well-qualified for her work duties and performed those duties as described above.  Upon information and belief, Defendant, without basis or justification, paid Attorney Keates substantially less than numerous male counterparts employed by the PDO.

47.    Attorney Keates was underpaid her annual salary as compared to numerous male attorneys in the same establishment who performed the same or substantially similar work, the performance of which required equal skill, effort, and responsibility, and which were performed under similar working conditions.

### C.    The Salary That Defendant Paid to Plaintiffs Was Substantially Less Than That Paid To Comparator Male Attorneys

48.    From at least 2000, Defendant has paid female attorneys substantially less than that paid to comparator male attorneys.  When it came to salary increases in the PDO, male

attorneys were the prevalent beneficiaries of the pay increases being given. Upon information and belief, comparator attorneys were paid as follows:[2]

| Comparator | Date of Hire as Attorney (DOH) | Annual Salary at DOH | Annual Salary 2021 | Annual Salary 2011 |
|---|---|---|---|---|
| Richard Blasetti | 1/1/03 | $37,200.00 | $53,758.39 | $41,016.24 |
| Denis Leonard | 12/2/02 | Undisclosed | $56,147.67 | Undisclosed |
| William Ruane | Undisclosed | Undisclosed | $74,556.48 | Undisclosed |
| Howard Anmuth | 3/7/05 | $27,500.20 | $52,459.58 | $42,207.60 |
| David Daniel | 1/1/03 | $28,750.02 | $54,833.56 | $41,967.90 |
| David Iannucci | 4/21/08 | $30,000.00 | $54,079.06 | $36,720.00 |
| Baltazar Rubio | 2/2/07 | $30,000.00 | $55,550.00 | $37,784.88 |
| Kenneth West | 5/5/08 | $31,000.00 | $53,575.45 | $30,600.00 |
| Jeffrey Bauer | 8/4/08 | Undisclosed | $55,550.00 | Undisclosed |
| Max Orenstein | 5/28/19 | Undisclosed | $52,015.00 | N/A |
| Steven Leach | 6/9/14 | Undisclosed | $55,182.71 | N/A |

49.     Defendant perpetuated these pay disparities through at least 2020.

50.     Upon information and belief, Defendant has not sought to rectify these pay disparities between incumbent female attorneys and male attorneys and equalize their pay structure.

---

[2] "Undisclosed" is used here to designate information that has not yet been disclosed to Plaintiffs but is otherwise discoverable.

> **D.**   ***The PDO Has a Policy and Practice of Discriminating Against Female Attorneys Employed By It, Including Plaintiffs and those Similarly-Situated Female Attorneys That They Represent, on the Basis of Gender By Paying Them Less Than Similarly-Situated Male Attorneys***

51.   Beginning at least as early as 2000 and continuously thereafter, female attorneys employed by the PDO have been paid less for comparable services than the PDO male attorneys.

52.   On or about August 20, 2020, the Pennsylvania Labor Relations Board ("PLRB") certified the United Auto Workers International Union ("Union") as the bargaining unit representative of 44 staff attorneys in the PDO (Case Nos. PERA-C-20-271-E and PERA C-20-273E).

53.   Thereafter, at the request of the Union, the PDO provided the Union wage information for bargaining unit members.   Upon information and belief, the wage information disclosed to the Union showed a <u>substantial, systemic, enduring and continuing wage disparity between various female and male attorneys, including Plaintiffs</u>. Plaintiffs thereafter became aware of that information.

54.   The PDO has no legitimate, non-discriminatory reason for this systemic pay disparity especially between female and male attorneys.

> **E.**   ***The PDO Has a Policy and Practice of Discriminating Against Female Attorneys Employed By It, By Providing Them With Less Favorable Terms and Conditions of Employment and Retaliating Against Them***

55.   Throughout Plaintiffs' respective tenures, the PDO had a policy and practices of discriminating against female attorneys on the basis of their gender.

56.     There has long been a pattern in the PDO of paying higher salaries to male attorneys than to female attorneys with more experience.

57.     Attorney Cavanagh was denied interviews by Defendant for other County positions when she was as qualified as male applicants and had more experience in the PDO as well as greater seniority.

58.     In 2012-2013, former PDO Director Douglas Roger, discouraged Attorney Cavanagh from seeking promotion to the $55,000 position of Team Chief and instead gave it to Denis Leonard, twelve years junior to Attorney Cavanagh.

59.     Also, Director Spiros "Spike" Angelos gave Attorney Cavanagh's office to male attorney David Iannucci, telling her that she did not need it because she had an office down the street.

60.     Baltazar Rubio, David Iannucci and Robert Lodge, male attorneys, all received promotions over Attorney Cavanagh and received higher pay than her.  Robert Lodge who was making about $50,000 well before Attorney Cavanagh, was even given the title of Chief of Diversion and Re-entry Unit at a salary of about $87,500.

61.     At various times during their respective tenures, Plaintiffs were told by managers in the PDO such things as:  public defender jobs are considered "second jobs" for females because their husbands work;  that their jobs give them something to do while their kids are in school;  and, that females do not want promotions because they have children and want to spend more time with them.

62.     Several years ago, Attorney Richard Blasetti (paid $53,758.30) was moved to the appeals unit instead of Attorney Cavanagh (paid $52,560.97).

63.     In addition to losses in wages, promotion denials and gender-based negative comments, Plaintiffs and the persons they seek to represent have been subjected to additional harm as reflected in the annually accrued pension benefit to each female attorney hired on unequal terms.  Each year of unequal pay not only resulted in less salary, but caused a lower pension amount at retirement age.

64.     Upon information and belief, a $5,000 pay differential in 2005 results in hundreds of thousands of dollars in lost pay, reduced salary increases and reduced pension benefits in the decades to follow.  For example, Attorney Cavanagh's starting salary in 2004 was $27,500.  A male attorney, Richard Blasetti, however, started in 2003 at a starting salary of $37,200.  The resulting compounded aggregate harm to her and similarly situated female attorneys in the PDO is considerable.

65.     The PDO has no legitimate, non-discriminatory reason for this sex discrimination.

## VII.   COLLECTIVE ACTION ALLEGATIONS AS TO THE EPA AND THE PEPL (The Fair Labor Standards Act of 1938, as amended by the Equal Pay Act, 29 U.S.C. § 216(d) *et seq.* ("FLSA") and the Pennsylvania Equal Pay Law, 43 P.S. § 336.5) ("PEPL")

66.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully rewritten herein.

67.     This action includes a disparate treatment collective action for (i) violations of the FLSA which is enforced pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(d), and (ii) for violations of the collective action provisions of the PEPL, 43

P.S. § 336.5.  This action is brought on behalf of Plaintiffs and all other females similarly-situated, specifically as follows:

> All female non-supervisory attorneys who are or were (a) employed by the PDO, (b) who were paid at salary levels less than the salaries paid to male Assistant Public Defenders in the same workplace for 9substantially equal work for jobs the performance of which required equal skill, effort, and responsibility and which were performed under similar working conditions, and/or (c) who were adversely impacted in terms and conditions of employment for advocating for pay equal to the pay of male Assistant Public Defenders.

68.     The FLSA and PEPL Collective Action Class defined above is referred to herein as the "Collective Class".  Plaintiffs consent in writing to be parties to the FLSA Collective Action Class pursuant to 29 U.S.C. § 216(d) and the PEPL, 43 P.S. §336.5.  Plaintiffs' written consents are attached hereto as Exhibit A.

69.     As explained herein, under applicable employment laws, Plaintiffs and members of the Collective Class are entitled to compensation equal to the amount paid to similarly-situated male Assistant Public Defenders.

70.     As a consequence of the breaches by Defendant of its duty under the FLSA and PEPL, Plaintiffs and the proposed Collective Class members have suffered substantial monetary losses and herein seek to be made whole for such losses.  Plaintiffs and the proposed Collective Class members further seek appropriate injunctive relief requiring future compliance with the equal pay provisions of the FLSA and the PEPL, as well as liquidated (double) damages pursuant to § 626(b) of the FLSA and § 336 of the PEPL.

71.     Defendant willfully and intentionally failed, delayed or refused to provide its female attorneys pay equal to the amounts paid to similarly-situated male attorneys and/or

adversely impacted its female attorneys in terms and conditions of employment for advocating for equal pay.

72.     The number of members of the Collective Class described herein are believed to be so numerous that joinder of all members is impracticable.

73.     All of the questions of fact and law that arise as a result of the allegations set forth herein are common to all of the members of the proposed Collective Class.

74      As harmed former and current PDO attorneys, Plaintiffs will fairly and adequately protect all interests of the proposed Collective Class.

75.     Proposed Collective Class members, like Plaintiffs, have been current and former non-supervisory attorneys employed by the PDO during the period between January 2000 and the present who while so employed were paid at salary levels less than the salaries paid to male attorneys in the same workplace for substantially equal work for jobs the performance of which required equal skill, effort, and responsibility and which were performed under similar working conditions.

76.     Defendant has acted and refused to act on grounds applicable to the Collective Class in that Plaintiffs were employees of the PDO during the period between January 2000 and the present and who while so employed were paid at salary levels less than the salaries paid to male attorneys in the same workplace for substantially equal work for jobs the performance of which required equal skill, effort, and responsibility and which were performed under similar working conditions.

77.     The collective action mechanism is superior to other available methods for a fair and efficient adjudication of this controversy.   The damages suffered by individual

members of the Collective Class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Class to individually seek redress for the wrongs done to them.

78.     Furthermore, even if any member of the Collective Class could afford individual litigation against Defendant, it would be unduly burdensome to the judicial system. The instant methodology, when compared to numerous individual actions, has fewer management difficulties and provides the benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court.  Concentrating this litigation in one forum will promote judicial economy and parity among the claims of individual members of the Collective Class and provide for judicial consistency.

79     Plaintiffs will fairly and adequately protect the interests of the Collective Class, as their interests are in complete alignment with those of the Collective Class, i.e., to prove and then eradicate Defendant's unlawful employment practices.

80.     Counsel for Plaintiff will adequately protect the interests of the Collective Class. Such counsel is experienced with employment/collective action litigation.

81.     Plaintiffs and the Collective Class they represent have suffered and will continue to suffer irreparable damage from the illegal policies, practices and customs regarding Defendant's unlawful employment practices.

82.     Defendant has engaged in a continuing violation of the FLSA and the PEPL.

83.     Plaintiffs, as well as the individuals they seek to represent, were denied pay equal to that of their male counterparts as required by the FLSA, Section 206(d), the PEPL Section 336, and/or were adversely impacted in terms and conditions of employment for

advocating for equal pay.  These violations were intended by Defendant, and accordingly, constitute a willful violation of the FLSA and the PEPL.

84.    Defendant has knowingly and willfully engaged in a continuing pattern and practice of compensating male attorneys more favorably than female attorneys

85.    Defendant has knowingly and willfully engaged in a continuing violation of the FLSA and the PEPL. Plaintiffs and the respective female attorneys they seek to represent are (a) similarly situated and (b) subjected to Defendant's common compensation policies, practices, and procedures and centralized decision-making resulting in unequal pay based on sex by failing to compensate Plaintiffs at a level commensurate with male employees who perform substantially equal or similar work.

86.    Defendant's actions as described herein were intentional and constitute a willful violation of the FLSA and the PEPL.

87.    Plaintiff has obtained the undersigned Counsel, who are experienced in labor, employment and class and collective action litigation, for these purposes.

## VIII. CLASS ACTION ALLEGATIONS AS TO TITLE VII, EQUAL PROTECTION AND PHRA CIVIL RIGHTS CLAIMS

88.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully rewritten herein.

89.    This action also includes a disparate treatment class action for (i) violations of Title VII, (ii) for violations of the Equal Protection provisions of the United States Constitution,

and (iii) for violations of PHRA.  This class action is brought on behalf of Plaintiffs and all other women similarly situated.

90.     At all times herein relevant, the PDO has engaged in systemic gender discrimination against its female attorneys in violation of their civil rights.  The PDO has caused, contributed to, and perpetuated gender-based disparities in the terms and conditions of employment of their female attorneys through common policies, practices, and procedures, including but not limited to common compensation policies, common conduct and management policies, and centralized decision-making, as well as individual unlawful acts and omissions based upon gender as described herein.

91.     Plaintiffs each filed a charge of discrimination with the EEOC on behalf of themselves and all similarly-situated female attorneys employed by the PDO alleging that the PDO had discriminated against them, and similarly-situated females, on the basis of sex.

92.     On May 13, 2022, the EEOC issued Plaintiffs Notices of Right to Sue, which these Plaintiffs each received on or about that same date.

93.     Plaintiffs all have exhausted their administrative remedies and have brought this action in a timely manner.

94.     Plaintiffs bring this action as a class action under Rules 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and all others similarly situated.

95.     Specifically, the class Plaintiffs seek to represent is comprised of all current and/or former female attorneys who were employed by the PDO at any time from 2000 through

the date of final judgment, or the date of the resolution of any appeals therefrom, whichever is later.

96.     Upon information and belief, the Class contains more than thirty individuals, all of whom are readily ascertainable based on the PDO's payroll records, and is so numerous that joinder of all members is impracticable.

97.     Plaintiffs' claims are typical of the claims of the other members of the Class because the PDO's discriminatory acts of subjecting female attorneys employed by it to terms and conditions of employment less favorable than male attorneys employed by it and has harmed Plaintiffs, and the members of the Class.

98.     Plaintiffs and other Class members sustained damages arising out of the PDO's common course of conduct in violation of law as complained herein.  The injuries and damages of each member of the Class were directly caused by the PDO's wrongful conduct in violation of laws as alleged herein.

99.     Plaintiffs seek to be appointed as representatives of the Class.  Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class action litigation.

100.    Plaintiffs will fairly and adequately protect the interests of the Class, as their interests are in complete alignment with those of the Class, i.e., to prove and then eradicate Defendant's unlawful employment practices.

101.    Counsel for Plaintiffs will adequately protect the interests of the Class.  Such counsel is experienced with employment/collective action litigation.

102.    Plaintiffs and the Class they represent have suffered and will continue to suffer irreparable damage from the illegal policy, practice, custom, acts and omissions regarding Defendant's unlawful employment practices.

103.    Defendant has engaged in a continuing violation of the Title VII, the Equal Protection clause and the PHRA.

104.    Common questions of law and fact exist as to all members of the Class which predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class include:

   a.    Whether the PDO discriminates against the Class in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq., as amended by the Civil Rights Act of 1991 "Title VII"), 42 U.S.C. § 1983 to redress the deprivation under color of State law of rights secured by the United States Constitution, and the Pennsylvania Human Relations Act, by subjecting them to different treatment on the basis of their gender, and whether Plaintiffs and the Class have suffered disparate impact and/or disparate treatment discrimination as a result of Defendant's wrongful conduct.

   b.    Whether there are legitimate, non-discriminatory reasons for this gross disparity of wages and other terms and conditions of employment and whether those reasons are pretext for unlawful gender discrimination.

   c.    Whether the PDO has willfully violated Title VII, the Equal Protection Clause and the PHRA by intentionally, knowingly, and/or deliberately subjecting female attorneys employed by it to terms and conditions of employment less favorable than male attorneys.

   d.    Whether, as a result of the PDO's ongoing conduct, violation of Title VII, Equal Protection and the PHRA and/or willful discrimination, Plaintiff and similarly situated former and current female attorneys have suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as non- economic damages.

105.   The PDO's policies at issue apply uniformly to all members of the Class.

106.   The prosecution of separate actions by individual members of the Class would create the risk of:

    a.    Inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the Class;  or

    b.    Adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their abilities to protect their interests.

107.   In construing and enforcing their uniform rules, policies and practices, and in taking and planning to take the actions described in this Complaint, the PDO has acted or refused to act on grounds that apply generally to each of the Plaintiffs, so that final injunctive relief or corresponding declaratory relief would be appropriate for the Class as a whole.

108.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and the PDO, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class.  A class action, on the other hand, would achieve substantial economies of time, effort and expense, and would ensure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

109.   The interest of members of the Class in individually controlling the prosecution of separate actions is theoretical rather than practical.   The Class has a high degree of

cohesion, and prosecution of the action through representatives would be unobjectionable. The amounts at stake for Class members, while substantial in the aggregate, are not great enough individually to enable them to maintain separate suits against the PDO.  Plaintiffs do not anticipate any difficulty in the management of this action as a class action.

## IX.    CAUSES OF ACTION

### COUNT ONE - VIOLATION OF THE EQUAL PAY ACT
(The Fair Labor Standards Act of 1938, as amended by the Equal Pay Act,
29 U.S.C. § 206 *et seq.*) ("EPA")
(INDIVIDUAL AND COLLECTIVE ACTION CLAIMS)

110.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully rewritten herein.

111.    Defendant has discriminated against Plaintiffs and those similarly situated as described in the Collective Class allegations above in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 206 *et seq.*, as amended by the Equal Pay Act of 1963.

112.    Defendant has paid Plaintiffs and the members of the EPA Collective Class less than similarly-situated male attorneys performing equal work on jobs the performance of which require equal skill, effort and responsibility and which are performed under similar working conditions.

113.    The differential in pay between Plaintiffs and the EPA Collective Class members on the one hand and similarly-situated male employees on the other hand was and is not due to any bona fide seniority, merit or incentive system or any other factor other than sex, but was because of gender.

114.    Defendant did not act in good faith and created and perpetuated gender-based wage discrimination in violation of the EPA.

115.    The foregoing conduct constitutes a willful violation of the EPA within the meaning of 29 U.S.C. § 255(a).  The three-year statute of limitations applies to the EPA violations because the Defendant's EPA violations were and are willful.

116.    As a result of Defendant's gender-based discriminatory policies and/or practices as described above, female attorneys employed by the PDO have suffered damages including, but not limited to, lost past and future income, compensation and benefits.

117.    Plaintiffs request relief as hereinafter described.

## COUNT ONE - PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the EPA Collective, pray for relief as follows:

(a)    Certify this action as a collective action under the EPA;  designate Plaintiffs as the representatives of the EPA Collective; promptly issue notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the Collective which (1) apprises them of the pendency of this action and (2) permits them to assert timely EPA claims in this action by filing individual written Consent to Join forms pursuant to 29 U.S.C. § 26 216(b);  and, toll the statute of limitations on the claims of all members of the EPA collective from the date the original Complaint was filed until the Collective members are provided with reasonable notice of the pendency of this action and a fair opportunity to exercise their right to opt into this collective action lawsuit;

(b)    Back Pay (including interest and benefits) for Plaintiffs and the Collective members;

(c)     Liquidated damages;

(d)     Pre-judgment and post-judgment interest;

(e)     Attorneys' fees and costs to the fullest extent allowed by law;  and,

(f)     Such other relief (including but not limited to injunctive relief) as the Court

deems just, necessary and proper.

## COUNT TWO - VIOLATION OF THE PENNSYLVANIA EQUAL PAY LAW
(Pennsylvania Equal Pay Law, 43 P.S. § 336.5) ("PEPL")
(INDIVIDUAL AND COLLECTIVE ACTION CLAIMS)

118.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully rewritten herein.

119.    Defendant has discriminated against Plaintiffs and those similarly situated as described in the Collective Class allegations above in violation of the PEPL, 43 P.S. § 336.5.

120.    Defendant has paid Plaintiffs and the members of the PEPL Collective Class less than similarly-situated male attorneys performing equal work on jobs the performance of which require equal skill, effort and responsibility and which are performed under similar working conditions.

121.    The differential in pay between Plaintiffs and the PEPL Collective Class on the one hand and similarly-situated male employees on the other hand was and is not due to any bona fide seniority, merit or incentive system or any other factor other than sex, but was because of gender.

122.    Defendant did not act in good faith and created and perpetuated gender-based wage discrimination in violation of the PEPL.

123.    The foregoing conduct constitutes a willful violation of the PEPL within the meaning of 43 P.S. § 336.5. The three-year statute of limitations applies to the PEPL violations because the Defendant's PEPL violations were and are willful.

124.    As a result of Defendant's gender-based discriminatory policies and/or practices as described above, female attorneys employed by the PDO have suffered damages including, but not limited to, lost past and future income, compensation and benefits.

125.    Plaintiffs request relief as hereinafter described.

## COUNT TWO - PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the PEPL Collective, pray for relief as follows:

(a)     Certify this action as a collective action under the PEPL;  designate Plaintiffs as the representatives of the PEPL Collective;  promptly issue notice to all similarly situated members of the PPEL Collective which (1) apprises them of the pendency of this action and (2) permits them to assert timely PEPL claims in this action by filing individual Consent to Join forms;  and toll the statute of limitations on the claims of all members of the collective from the date the original Complaint was filed until the PEPL Collective members are provided with reasonable notice of the pendency of this action and a fair opportunity to exercise their right to opt into this collective action lawsuit;

(b)     Back Pay (including interest and benefits) for Plaintiffs and the PEPL Collective

members;

(c)     Liquidated damages;

(d)     Pre-judgment and post-judgment interest;

(e)     Attorneys' fees and costs to the fullest extent allowed by law; and,

(f)     Such other relief (including but not limited to injunctive relief) as the Court deems

just, necessary and proper.

## COUNT THREE - VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED (42 U.S.C. § 2000e *et seq.*)
### (INDIVIDUAL AND COLLECTIVE ACTION CLAIMS)

126.    Plaintiffs re-allege and incorporate by reference each and every allegation contained

in the previous paragraphs of this Complaint as if fully set forth herein.

127.    Plaintiffs bring this claim on behalf of themselves and the Title VII Class they

represent.

128.    The conduct described herein violates Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e *et seq*.

129.    Defendant has and continues to intentionally discriminate against Plaintiffs and the

Title VII class they seek to represent on the basis of gender by maintaining a policy and

practice of treating them less favorably than similarly-situated male employees with respect

to, among other things, compensation policies, conduct and management policies, pay,

promotions, office assignment, performance review, benefits of employment as well as

individual unlawful acts and omissions based upon gender as described herein.

130.     Defendant's discriminatory practices described above have resulted in Plaintiffs and the Title VII class having loss of past and future wages, pension and other job benefits, and have caused Plaintiffs to suffer emotional pain, distress, anguish and suffering, anxiety, ridicule, humiliation, inconvenience, loss of enjoyment of life, injury to professional standing, injury to character and reputation, indignity, apprehension, loss of self-esteem and other non-pecuniary losses.

131.     Defendant acted or failed to act as herein alleged with malice or reckless indifference to the protected rights of Plaintiffs and the class they seek to represent. Plaintiffs and the class are thus entitled to punitive damages.

132.     Plaintiffs request relief as hereinafter described.

## COUNT THREE - PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Title VII class they seek to represent, pray for relief as follows:

(a)     Certify this action as a class action under Title VII, designate Plaintiffs as the representatives of the proposed Title VII class, and their counsel of record as Title VII Class Counsel;

(b)     All damages that the individual Plaintiffs and the Title VII class have sustained as a result of Defendant's unlawful conduct including, but not limited to, back pay, front pay, general and special damages for lost compensation and job benefits that they would have received but for the discriminatory practices of the Defendant;

(c)     Exemplary and punitive damages in an amount commensurate with Defendant's ability to pay and to deter future discriminatory conduct;

(d)     A preliminary and permanent injunction against Defendant and its officials, directors, officers, agents, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies and practices set forth herein;

(e)     A declaratory judgment that the practices complained of in this Complaint are unlawful and violate 42 U.S.C. § 2000e *et seq.*;

(f)     An adjustment of the wage rates and benefits for Plaintiffs and the Title VII class to the level these Plaintiffs and the Title VII class would be enjoying but for Defendant's discriminatory practices;

(g)     Pre-judgment and post-judgment interest;

(h)     Attorneys' fees and costs to the fullest extent allowed by law; and,

(i)     Such other relief (including but not limited to injunctive and declaratory relief) as the Court deems just, necessary and proper.

## COUNT FOUR - VIOLATION OF THE PA HUMAN RELATIONS ACT
### (43 P.S. § 951 *et seq.*)
### (INDIVIDUAL AND CLASS CLAIMS)

133.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

134.    Plaintiffs bring this claim on behalf of themselves and the Class they represent.

135.    The conduct described herein violates the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* ("PHRA").

136.    Defendant has and continues to intentionally discriminate against Plaintiffs and the PHRA class they seek to represent on the basis of gender by maintaining a policy and practice of treating them less favorably than similarly situated male employees with respect to, among other things, compensation policies, conduct and management policies, pay, promotions, office assignment, performance review, benefits of employment as well as individual unlawful acts and omissions based upon gender as described herein.

137.    Defendant's discriminatory practices described above have resulted in Plaintiffs and the PHRA class having loss of past and future wages, pension and other job benefits, and have caused Plaintiffs to suffer emotional pain, distress, anguish and suffering, anxiety, ridicule, humiliation, inconvenience, loss of enjoyment of life, injury to professional standing, injury to character and reputation, indignity, apprehension, loss of self-esteem and other non-pecuniary losses.

138.    Defendant acted or failed to act as herein alleged with malice or reckless indifference to the protected rights of Plaintiffs and the class they seek to represent.

139.    Plaintiffs request relief as hereinafter described.

**COUNT FOUR - PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the PHRA class they seek to represent, pray for relief as follows:

(a)    Certify this action as a class action under the PHRA, designate Plaintiffs as the representatives of the proposed PHRA class, and their counsel of record as PHRA Class Counsel;

(b)     All damages that the individual Plaintiffs and the PHRA class have sustained as a result of Defendant's unlawful conduct including, but not limited to, back pay, front pay, general and special damages for lost compensation and job benefits that they would have received but for the discriminatory practices of the Defendant;

(c)     Exemplary and punitive damages in an amount commensurate with Defendant's ability to pay and to deter future discriminatory conduct;

(d)     A preliminary and permanent injunction against Defendant and its officials, directors, officers, agents, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies and practices set forth herein;

(e)     A declaratory judgment that the practices complained of in this Complaint are unlawful and violate 42 U.S.C. § 2000e *et seq.*;

(f)     An adjustment of the wage rates and benefits for Plaintiffs and the PHRA class to the level these Plaintiffs and the PHRA class would be enjoying but for Defendant's discriminatory practices;

(g)     Pre-judgment and post-judgment interest;

(h)     Attorneys' fees and costs to the fullest extent allowed by law; and,

(i)     Such other relief (including but not limited to injunctive and declaratory relief) as the Court deems just, necessary and proper.


**COUNT FIVE - VIOLATION OF THE EQUAL PROTECTION PROVISIONS OF THE UNITED STATES CONSTITUTION**
**(INDIVIDUAL AND CLASS CLAIMS)**

140.   Plaintiffs re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

141.   Plaintiffs bring this claim on behalf of themselves and the Class they represent pursuant to 43 U.S.C. § 1983.

142.   The conduct described herein violates the Equal Protection provisions of the 14th Amendment of the United States Constitution in that Defendant is required thereunder to govern impartially and not draw distinctions between males and females based on their gender – an obligation it has failed to follow.

143.   Defendant has and continues to intentionally treat female attorneys and male attorneys unequally by maintaining and implementing a policy and practice of treating females less favorably than similarly-situated male employees with respect to, among other things, compensation policies, conduct and management policies, pay, promotions, office assignment, performance review, benefits of employment as well as individual unlawful acts and omissions based upon gender as described herein. Such gender-based treatment constitutes a violation of the Equal Protection Clause.

144.   In maintaining and implementing such unlawful policies, practices, conduct and omissions, Defendant has caused the deprivation of the rights of Plaintiffs and those they seek to represent in violation of the constitutional principles of equal protection.

145.   Defendant has undertaken its unlawful actions and omissions described herein under color of State law.

146.     Defendant's practices described above have resulted in Plaintiffs and the Class members being denied equal protection of the laws subjecting them to the loss of past and future wages, pension and other job benefits, and have caused Plaintiffs to suffer emotional pain, distress, anguish and suffering, anxiety, ridicule, humiliation, inconvenience, loss of enjoyment of life, injury to professional standing, injury to character and reputation, indignity, apprehension, loss of self-esteem and other non-pecuniary losses.

147.     Defendant under the color of State law acted or failed to act as herein alleged with malice or reckless indifference to the protected rights of Plaintiffs and the class they seek to represent. Plaintiffs and the class are thus entitled to punitive damages.

148.     Plaintiffs request relief as hereinafter described.

## COUNT FIVE - PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the class they seek to represent, pray for relief as follows:

(a)     Certify this action as a class action, designate Plaintiffs as the representatives of the proposed class, and their counsel of record as Class Counsel;

(b)     All damages that the individual Plaintiffs and class members have sustained as a result of Defendant's unlawful conduct including, but are not limited to, back pay, front pay, general and special damages for lost compensation and job benefits that they would have received but for the gender-based practices of the Defendant;

(c)     Exemplary and punitive damages in an amount commensurate with Defendant's ability to pay and to deter future deprivation of civil rights;

(d)     A preliminary and permanent injunction against Defendant and its officials, directors, officers, agents, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies and practices set forth herein;

(e)     A declaratory judgment that the practices complained of in this Complaint are unlawful and violate the Equal Protection Clause of the 14th Amendment to the United States Constitution;

(f)     An adjustment of the wage rates and benefits for Plaintiffs and the class members to the level these Plaintiffs and the class members would be enjoying but for the deprivation of the equal protection of the laws to which Plaintiffs and the class members were subjected by Defendant under color of law;

(g)     Pre-judgment and post-judgment interest;

(h)     Attorneys' fees and costs to the fullest extent allowed by law; and,

(i)     Such other relief (including but not limited to injunctive and declaratory relief) as the Court deems just, necessary and proper.

## JURY TRIAL DEMAND AND COURT'S CONTINUING JURISDICTION

All of the claims of Plaintiff and members of the Collective and Class actions are to receive a trial by jury to the extent allowed by applicable law.  This demand has also been endorsed on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38 (b); this Court should maintain jurisdiction over the instant action to ensure full compliance

with its Orders therein until such time as it is satisfied that its Orders and dictates have been

complied with in full by Defendant.


Respectfully submitted,

**WEINSTEIN LAW FIRM, LLC**

/s/ Marc E. Weinstein, Esquire
Marc E. Weinstein
Identification No. 79474
500 Office Center Drive, Suite 400
Fort Washington, PA 19034
267.513.1942 (tel)
marc@meweinsteinlaw.com

and

**PENTIMA LAW FIRM, PLLC**

/s/ Vincent J. Pentima, Esquire
Vincent J. Pentima
Identification No. 18523
507 Jennifer Drive
Dresher, PA 19025
267.670.2796 (tel)
vjp@pentimalaw.com

Dated:  August 9 , 2022

EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

**TONI LEE CAVANAGH, ESQUIRE,** :      CIVIL ACTION
**DENISE McCRAE, ESQUIRE,**      :
**NICHOLENA RUSHTON, ESQUIRE,** :      NO. _____
Individuals, by and on behalf of      :
themselves and all persons similarly      :
situated      :      COLLECTIVE AND CLASS ACTION
      :
      Plaintiffs,      :
      :
      v.      :
      :
**COUNTY OF DELAWARE**      :      JURY TRIAL DEMANDED
      :
      Defendant.      :

### CONSENT TO JOIN

By my signature below, I, Toni Lee Cavanagh, Esquire,  hereby authorize the filing and prosecution of the above-styled Fair Labor Standards Act and Equal Pay Act collective action and agree to act as a representative of others similarly situated and to make decisions on my behalf and on behalf of others similarly situated concerning this litigation, the method and manner of conduction this litigation, and any other matters pertaining to this lawsuit.

Print Name:                    Sign Name:                    Date:

Toni Lee Cavanagh          *[signature]*               8/4/2022

**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

CIVIL ACTION

**TONI LEE CAVANAGH, ESQUIRE,** :
**DENISE McCRAE, ESQUIRE, NICHOLENA
RUSHTON, ESQUIR** Individuals, by and on
behalf of themselves and all persons similarly
situated

NO.

COLLECTIVE AND CLASS
ACTION

Plaintiffs,

**COUNTY OF DELAWARE**

JURY TRIAL DEMANDED

Defendant.

**CONSENT TO JOIN**

By my signature below, I, Denise McCrae, Esquire, hereby authorize the filing and
prosecution of the above-styled Fair Labor Standards Act and Equal Pay Act collective action and
agree to act as a representative of others similarly situated and to make decisions on
my behalf and on behalf of others similarly situated concerning this litigation, the method
and manner of conduction this litigation, and any other matters pertaining to this lawsuit.

Print Name:
Denise McCrae

Sign Name:
*Denise McCrae*

Date:
09/09\2022

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TONI LEE CAVANAGH, ESQUIRE,** | : | CIVIL ACTION |
| **DENISE McCRAE, ESQUIRE,** | : | |
| **NICHOLENA RUSHTON, ESQUIRE,** | : | NO. _____ |
| Individuals, by and on behalf of | : | |
| themselves and all persons similarly | : | |
| situated | : | |
| | : | COLLECTIVE AND CLASS ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| **COUNTY OF DELAWARE** | : | JURY TRIAL DEMANDED |
| | : | |
| Defendant. | : | |

### CONSENT TO JOIN

By my signature below, I, Nicolena Rushton, Esquire, hereby authorize the filing and prosecution of the above-styled Fair Labor Standards Act and Equal Pay Act collective action and agree to act as a representative of others similarly situated and to make decisions on my behalf and on behalf of others similarly situated concerning this litigation, the method and manner of conduction this litigation, and any other matters pertaining to this lawsuit.

Print Name:                    Sign Name:                    Date:

Nicholena Rushton          *[signature]*          8/4/2022

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| TONI LEE CAVANAGH, ESQ. et al. | COUNTY OF DELAWARE |

| (b) County of Residence of First Listed Plaintiff    DELAWARE | County of Residence of First Listed Defendant    DELAWARE |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Marc E. Weinstein  WEINSTEIN LAW FIRM, LLC  500 Office Center Dr., Ste. 400, Ft. Washington, PA 19034 | |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | | [ ] 370 Other Fraud | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [x] 442 Employment | [ ] 510 Motions to Vacate Sentence | | | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | **FEDERAL TAX SUITS** | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | |
| | | [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

| VI. CAUSE OF ACTION | Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:<br>42 U.S.C. sec. 2000e (Title VII of the Civil Rights Act of 1964, as amended)<br>Brief description of cause:<br>Sex Discrimination in Employment |
|---|---|

| VII. REQUESTED IN COMPLAINT: | [x] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P. | DEMAND $ | CHECK YES only if demanded in complaint:<br>JURY DEMAND:   [x] Yes   [ ] No |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | *(See instructions):* | JUDGE | DOCKET NUMBER |
|---|---|---|---|

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| Aug 9, 2022 | /s/ Marc E. Weinstein |

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 112 West Front Street, Media, PA 19063 (DELAWARE COUNTY, PA)

Address of Defendant: 220 North Jackson Street, Media, PA 19063 (DELAWARE COUNTY, PA)

Place of Accident, Incident or Transaction: DELAWARE COUNTY, PA

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? Yes ☐ No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? Yes ☐ No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? Yes ☐ No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? Yes ☐ No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 08/09/2022 — *Must sign here* — 79474

*Attorney-at-Law / Pro Se Plaintiff* — *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☑ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases *(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify):* _____
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Marc E. Weinstein , counsel of record *or* pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑ Relief other than monetary damages is sought.

DATE: 08/09/2022 — *Sign here if applicable* — 79474

*Attorney-at-Law / Pro Se Plaintiff* — *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)