## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TONI LEE CAVANAGH, ESQUIRE,** | : | CIVIL ACTION |
| **DENISE McCRAE, ESQUIRE,** | : | |
| **NICHOLENA RUSHTON, ESQUIRE**, | : | NO. 2:22-cv-03174 |
| Individuals, by and on behalf of | : | |
| themselves and all persons similarly | : | |
| situated | : | COLLECTIVE AND CLASS ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| **COUNTY OF DELAWARE** | : | JURY TRIAL DEMANDED |
| | : | |
| Defendant. | : | |

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiffs Toni Lee Cavanagh, Denise McCrae and Nicholena Rushton submit the within *Memorandum of Law in Opposition to Defendant's Motion to Dismiss* this Complaint. Defendant's Motion asserts that pursuant to Rule 12(b)(6) F.R.Civ.P. the Court should partially dismiss the Complaint for failing to state a claim upon which relief can be granted. For any and all of the reasons that follow, Plaintiffs respectfully request that this Honorable Court deny Defendant's Motion and permit this matter to proceed accordingly.

## I.      INTRODUCTION AND FACTUAL BACKGROUND OF PLAINTIFFS' CLAIMS

Plaintiffs Toni L. Cavanagh, Esquire, Denise McCrae, Esquire, Nicholena Rushton, Esquire, individually and on behalf of all other women who are or were employed by Defendant's Office of Public Defender ("PDO" or "Delco"), worked for Defendant as attorneys and were consistently paid less money than their male counterparts who also were employed by Defendant. Defendant has maintained, fostered, promoted and sustained **systemic gender-based discriminatory practices** by methodically paying wages

1

to its non-supervisory female attorneys at rates less than the rates paid to male attorneys in the same workplace for substantially **equal work** for jobs the performance of which require and required equal skill, effort, and responsibility and which were performed under similar working conditions. This gender-based pay disparity by Defendant remained extant even though the job performance of Plaintiffs and similarly situated female attorneys has been superior to or the same as their male counterparts. Likewise, some of the Plaintiffs, as described in the Complaint, were systemically discriminated against by Defendant in other terms and conditions of employment on account of their sex through such discriminatory acts as failure to promote, disparate office assignments, unwarranted negative performance reviews, and other benefit denials.

Defendant has claimed that it "is committed to providing and promoting quality legal representation for indigent adults and children facing the loss of their rights, liberty and dignity." Through its public defenders, Defendant strives to provide equal justice for marginalized communities. The PDO is expected to provide zealous advocacy for the thousands of clients it represents yearly. Despite its lofty mission and goals, Defendant has not respected and valued its female attorneys as much as its male attorneys. In undertaking here to rectify the injustices and inequalities to which Defendant has subjected its female attorneys, Plaintiffs have alleged the following.

II.   **NATURE OF THE ACTION**

This collective action and class action is brought by Plaintiffs on behalf of themselves and all other similarly situated female attorneys currently and formerly employed in the PDO for Defendant's violations of the (a) Count One - Equal Pay Act ("EPA"), 29 U.S.C. § 206(d) *et seq*., (b) Count Three - Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"), (c) Count Five - 42 U.S.C. § 1983 to redress the deprivation under color of State law of equal protection rights secured by the United States Constitution ("Section 1983"), (d) Count Four - Pennsylvania Human Relations Act

("PHRA"), 43 P.S. §§ 951 *et seq*., and (e) Count Two - Pennsylvania Equal Pay Law, 43 P.S. § 336 ("PEPL"). Defendant discriminates against Plaintiffs and the collective and class they seek to represent by paying them less than male attorneys for substantially equal work, denying them equal support, development and advancement on the basis of their sex, discriminating against them in other terms and conditions of employment enjoyed by male attorneys employed by Defendant, and the denial of the equal protection of the laws under the United States Constitution.

This action also addresses how Defendant **perpetuated** the gender pay gap between male attorneys and female attorneys employed by it and fostered discriminatory practices on the basis of sex. This lawsuit seeks an end to Defendant's **discriminatory practices** and denial of the equal protection of the laws, and an award to make whole Plaintiffs and the class and collective they represent, as well as provide for liquidated damages and all other appropriate relief including but not limited to compensatory damages, emotional distress, and injunctive remedies.

Plaintiffs have alleged that Delco since at least 2000 has maintained, fostered, promoted and sustained **systemic discriminatory practices, customs and policies** based on the gender of its female public defenders. Defendant has knowingly and willfully engaged in a continuing pattern and practice of compensating male attorneys more favorably than female attorneys. As alleged, there has long been a pattern in the PDO of paying higher salaries to male attorneys than to female attorneys with more experience. The Complaint has alleged **no less than 49 times the existence of gender discrimination that was "systemic", "practice", "policy" and "custom"**. (Complaint at ¶¶ 2, 20, 26, 53, 54, 55, 79, 81, 84, 85, 90, 100, 102, 107, 116, 124, 129, 130, 136, 137, 143, 144 and 145). See for example the following Complaint allegations:

    53.    Thereafter, at the request of the Union, the PDO provided the Union wage information for bargaining unit members. Upon information and belief, the wage information disclosed to the Union showed a <u>substantial. systemic, enduring and</u> <u>continuing wage disparity between various female and male attorneys, including Plaintiffs.</u> Plaintiffs thereafter became aware of that information.

54. The PDO has no legitimate, non-discriminatory reason for this systemic pay disparity especially between female and male attorneys.

55. Throughout Plaintiffs' respective tenures, the PDO had a policy and practices of discriminating against female attorneys on the basis of their gender.

85. Defendant has knowingly and willfully engaged in a continuing violation of the FLSA and the PEPL. Plaintiffs and the respective female attorneys they seek to represent are (a) similarly situated and (b) subjected to Defendant's common compensation policies, practices, and procedures and centralized decision-making resulting in unequal pay based on sex by failing to compensate Plaintiffs at a level commensurate with male employees who perform substantially equal or similar work.

90. At all times herein relevant, the PDO has engaged in systemic gender discrimination against its female attorneys in violation of their civil rights. The PDO has caused, contributed to, and perpetuated gender-based disparities in the terms and conditions of employment of their female attorneys through common policies, practices, and procedures, including but not limited to common compensation policies, common conduct and management policies, and centralized decision-making, as well as individual unlawful acts and omissions based upon gender as described herein.

107. In construing and enforcing their uniform rules, policies and practices, and in taking and planning to take the actions described in this Complaint, the PDO has acted or refused to act on grounds that apply generally to each of the Plaintiffs, so that final injunctive relief or corresponding declaratory relief would be appropriate for the Class as a whole.

116. As a result of Defendant's gender-based discriminatory policies and/or practices as described above, female attorneys employed by the PDO have suffered damages including, but not limited to, lost past and future income, compensation and benefits.

129. Defendant has and continues to intentionally discriminate against Plaintiffs and the Title VII class they seek to represent on the basis of gender by maintaining a policy and practice of treating them less favorably than similarly-situated male employees with respect to, among other things, compensation policies, conduct and management policies, pay, promotions, office assignment, performance review, benefits of employment as well as individual unlawful acts and omissions based upon gender as described herein.

130. Defendant's discriminatory practices described above have resulted in Plaintiffs and the Title VII class having loss of past and future wages, pension and other job benefits, and have caused Plaintiffs to suffer emotional pain, distress, anguish and suffering, anxiety, ridicule, humiliation, inconvenience, loss of enjoyment of life, injury to professional standing, injury to character and reputation, indignity, apprehension, loss of self-esteem and other non-pecuniary losses.

136. Defendant has and continues to intentionally discriminate against Plaintiffs and the PHRA class they seek to represent on the basis of gender by maintaining a policy and practice of treating them less favorably than similarly situated male employees with

respect to, among other things, compensation policies, conduct and management policies, pay, promotions, office assignment, performance review, benefits of employment as well as individual unlawful acts and omissions based upon gender as described herein.

137. Defendant's discriminatory practices described above have resulted in Plaintiffs and the PHRA class having loss of past and future wages, pension and other job benefits, and have caused Plaintiffs to suffer emotional pain, distress, anguish and suffering, anxiety, ridicule, humiliation, inconvenience, loss of enjoyment of life, injury to professional standing, injury to character and reputation, indignity, apprehension, loss of self-esteem and other non-pecuniary losses.

## III. **DEFENDANT'S CONTENTIONS**

Defendant filed the instant Motion for partial dismissal in order to (Defendant's Memorandum at 2):

(a) Dismiss Count 2 of the Complaint in its entirety because, as a matter of law, Plaintiffs cannot recover under both the Equal Pay Act and the PA Equal-Payment Law;

(b) Dismiss Plaintiffs' demand for punitive damages asserted under Counts 2, 3 and 4 because such damages are not available as a matter of law against the County as a municipality;

(c) Dismiss Plaintiffs' claims for all alleged non-pay-related discriminatory acts as both time barred and, in the alternative, factually insufficient[1]; and,

(d) Dismiss Plaintiffs' demand for damages for their pay-related claims to the extent the damages sought in the Complaint fall outside the time period prescribed by the applicable [administrative] statutes of limitations.

## IV. **STANDARD OF REVIEW OF A RULE 12 (B)(6) MOTION**

To survive a motion to dismiss brought under F.R.Civ.P. 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." In their causes of action, Plaintiffs'

---

[1] Defendant has **not** moved for the dismissal of Plaintiffs' EPA claims (which Defendant labels "pay-based claims") on the basis of **factual insufficiency**, namely Counts One and Four. Nor could it, given the highly detailed factual matter and content described in the Complaint.

Complaint has plead more than "sufficient factual matter...to 'state a claim to for relief that is plausible on its face'" with respect to the conduct of Defendant. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) (quoting *Twombly, id.* at n.3); *George v. Rehiel*, 738 F.3d 562, 581 (3d Cir. 2013). As aptly and concisely summarized by the Court in *DiFolco v. MSNBC Cable L.L.C.*, 622 F3d 104, 111 (2d Cir. 2010): "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." (Quoting *Iqbal*, 129 S. Ct. at 1950). Further, the Third Circuit Court of Appeals in *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117-118 (2013), expounded as follows:

> The District Court cited *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), in support of its dismissal. However, those cases do not provide a panacea for defendants. Instead, **they merely require that plaintiff raise a "plausible claim for relief."** *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937. Although it is established that under the *Twombly and Iqbal* pleading standards, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955, those cases make it clear that **a claimant does not have to "set out in detail the facts upon which he bases his claim."** *Id*. at 555 n. 3, 127 S.Ct. 1955 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) (emphasis added). **The pleading standard "is not akin to a 'probability requirement'"** *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955); to survive a motion to dismiss, a complaint merely has to state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937.

## V.    ARGUMENT

### A.    Pennsylvania Equal Payment Law Claim Under Count Two - Dismissal

Plaintiffs agree to a stipulated Rule 41 F.R.Civ.P. dismissal of their claims under the Pennsylvania Equal Payment Law asserted in Count Two of the Complaint.

### B.    Punitive Damages Claims Under Counts Two, Three and Four – Dismissal

Plaintiffs agree to a stipulated Rule 41 F.R.Civ.P. dismissal of their punitive damages claims under Counts Two, Three and Four.

**C.  Plaintiffs' Claims for So-Called "Non-Pay Related" Gender Discrimination
    Are Neither Time Barred Nor Factually Insufficient**

      **1.  Time Bar**

Defendant has characterized the allegations of discriminatory failure to promote, disparate office assignments, unwarranted negative performance reviews, and other benefit denials as "non-pay related claims." (Defendant's Memorandum at 4). It becomes quite apparent that this characterization is labored and artificial so that Delco could escape the provisions and intent of the Ledbetter Fair Pay Act of 2009, 42 U.S.C. §2000e-5(e)(3) (hereinafter referred to as the "FPA"). Plaintiffs' allegations of discriminatory failure to promote, disparate office assignments, unwarranted negative performance reviews, and other benefit denials are mischaracterized as "non-pay" claims which should be dismissed as administratively "time-barred discrete acts" subject to the 180/300 day time period for filing administrative charges with the EEOC. While the Title VII statute of limitations applies to discrete actions (see *Noel v. The Boeing Company,* 622 F.3d 266 (3d Cir. 2010)), Defendant is wholly mistaken in its assertion that "the non-pay injuries allegedly suffered by Plaintiffs … unequivocally qualify as 'discrete' acts for purposes of Title VII, the PHRA, and the 14th Amendment." (Footnotes omitted). (Defendant's Memorandum at 7-8). In so characterizing those particular discriminatory actions as "discrete", Defendant hopes to successfully maintain that those "non-pay" injuries fall outside of the limitations period and are time-barred for all times except two or three years. (*Id.*).

To the contrary, those mislabeled and misapprehended "non-pay" acts are all alleged in the Complaint and relate expressly to Plaintiffs' claims of unequal compensation. (See Part II. *supra*). Those so-called non-pay claims of sex discrimination fall squarely within the FPA which expressly renders otherwise out-of-time administrative filings as timely. Clearly, Plaintiffs' allegations of failure to promote, disparate office assignments, unwarranted negative performance reviews, and other benefit denials, as alleged, constitute "discrimination in compensation" which under the reasoning of the Third Circuit Court of Appeals in *Noel* would fall under the FPA. Such is the case because Plaintiffs received less

compensation during their tenures as a consequence of their being victims (from as early as 2000) of these so-called non-pay discriminatory acts.  The FPA makes clear that in pay discrimination matters an unlawful employment practice occurs each time a woman is affected by application of a discriminatory compensation decision.[2]  The FPA revives claims since each paycheck affected persons receive during the requisite time period restarts the ticking of the administrative clock.  Since Plaintiffs have alleged that the so-called non-pay acts resulted in lower pay for them, each paycheck they received since 2000 started the administrative clock "anew".

The FPA was passed in response to the 2007 Supreme Court decision in *Ledbetter v. Goodyear Tire & Rubber Co., Inc.,* 550 U.S. 618 (2007) holding in a 5-4 decision that "pay-setting" was a discrete act and therefore the period for filing an EEOC claim commences when the first unlawful act occurred.  (*Id*. at 621).  *Ledbetter*, however, was superseded, in part, in 2009 by the FPA as the Court recognized in *Mikula v. County of Allegheny*, 2009 WL 288742 (3d Cir. 2009) which gave broad interpretation to the phrase "compensation decision" following enactment of the FPA.  In *Ledbetter*, plaintiff alleged that employer supervisors evaluated her poorly because of her sex resulting in lower pay than if her evaluations had been discrimination free. (*Id*. at 621-22).  She further argued that this poor evaluation negatively affected her pay throughout the course of her employment resulting in a salary that was significantly lower than her male peers.  (*Id*. at 622).  In *Ledbetter*, the Supreme Court affirmed the reversal of the jury award in her favor ruling that "[t]he EEOC charging period is triggered when a discrete unlawful practice takes place." The Court postulated that a new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent non-discriminatory acts that entail adverse effects resulting from the past discrimination.  (*Id*. at 628).

In *Noel,* the Court recognized that the FPA amended Title VII by adding the following section:

---

[2]  As discussed below, these so-called non-pay injuries are not time barred since the acts also alleged constitute continuing violations.  *See, e.g., Mandel v. M & Q Packaging Corp*., 2013 WL 141890 (3d Cir. Jan. 14, 2013).

[A]n unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, when a discriminatory compensation decision **or other practice** is adopted, when an individual becomes subject to a discriminatory compensation decision **or other practice**, or when an individual is affected by application of a discriminatory compensation decision **or other practice**, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision **or other practice**. 42 U.S.C. § 2000e-5(e)(3)(A). (Emphasis added).

*Noel,* 622 F.3d at 271.

The Third Circuit Court of Appeals then explained, "[t]he purpose of the FPA was to reinstate the law regarding the timeliness of pay compensation claims as it was prior to the *Ledbetter* decision, which Congress believed undermined statutory protections against compensation discrimination by unduly restricting the time period in which victims could challenge and recover for discriminatory compensation decisions.  Thus, pursuant to the FPA, each paycheck that stems from a discriminatory compensation decision or pay structure is a tainted, independent employment-action that commences the administrative statute of limitations."  *Id.* (internal quotations and citations omitted).

In their Complaint, Plaintiffs expressly allege pay disparity/discrimination in connection with Delco's discriminatory acts of failure to promote, disparate office assignments, unwarranted negative performance reviews, and other benefit denials.  It is alleged, for example:

55.   Throughout Plaintiffs' respective tenures, the PDO had a policy and practices of discriminating against female attorneys on the basis of their gender.

56.   There has long been a pattern in the PDO of paying higher salaries to male attorneys than to female attorneys with more experience.

57.   Attorney Cavanagh was denied interviews by Defendant for other County positions when she was as qualified as male applicants and had more experience in the PDO as well as greater seniority.

58.   In 2012-2013, former PDO Director Douglas Roger, discouraged Attorney Cavanagh from seeking promotion to the $55,000 position of Team Chief and instead gave it to Denis Leonard, twelve years junior to Attorney Cavanagh.

59.   Also, Director Spiros "Spike" Angelos gave Attorney Cavanagh's office to male attorney David Iannucci, telling her that she did not need it because she had an office down the street.

60.     Baltazar Rubio, David Iannucci and Robert Lodge, male attorneys, all received promotions over Attorney Cavanagh and received higher pay than her.  Robert Lodge who was making about $50,000 well before Attorney Cavanagh, was even given the title of Chief of Diversion and Re-entry Unit at a salary of about $87,500.

61.     At various times during their respective tenures, Plaintiffs were told by managers in the PDO such things as:  public defender jobs are considered "second jobs" for females because their husbands work;  that their jobs give them something to do while their kids are in school;  and, that females do not want promotions because they have children and want to spend more time with them.

62.     Several years ago, Attorney Richard Blasetti (paid $53,758.30) was moved to the appeals unit instead of Attorney Cavanagh (paid $52,560.97).

63.     In addition to losses in wages, promotion denials and gender-based negative comments, Plaintiffs and the persons they seek to represent have been subjected to additional harm as reflected in the annually accrued pension benefit to each female attorney hired on unequal terms.  Each year of unequal pay not only resulted in less salary, but caused a lower pension amount at retirement age.

64.     Upon information and belief, a $5,000 pay differential in 2005 results in hundreds of thousands of dollars in lost pay, reduced salary increases and reduced pension benefits in the decades to follow.  For example, Attorney Cavanagh's starting salary in 2004 was $27,500.  A male attorney, Richard Blasetti, however, started in 2003 at a starting salary of $37,200.  The resulting compounded aggregate harm to her and similarly situated female attorneys in the PDO is considerable.

These Complaint allegations style the unlawful actions as compensation setting claims – a nexus is described between those actions by Delco and Plaintiffs' resultant lower compensation.  (See also Part II *supra*).  Defendant's motion to dismiss would deprive Plaintiffs at this very nascent stage of these proceedings of an opportunity to discover additional facts of disparate pay and the nexus of the so-called "non-pay" claims to receipt of lesser compensation.

The Complaint expressly raises the specter of compensation in the context of the allegations of the claimed discriminatory acts of failure to promote, disparate office assignments, unwarranted negative performance reviews, and other benefit denials.  The FPA expressly refers to and is made applicable to "a discriminatory compensation decision **or other practice**". To accept Defendant's "discrete" act argument would render the FPA phase "or other practices" superfluous in the context of the express allegations of the Complaint.  The Court in *Noel* specifically gave significant weight to the phrase "or other practice", stating:

> This interpretation does not render the phrase "or other practice" superfluous. These words merely indicate that in order to fall within the ambit of the FPA, the discriminatory "other practice," while not actually setting a disparate remuneration level, must relate to pay disparity. See [*Schuler v. PricewaterhouseCoopers, LLP*, 595 F.3d 370, 375 (D.C.Cir.2010)] (noting that "giving an employee a poor performance evaluation based upon her sex and then using the [unlawful] evaluation to determine her rate of pay" constitutes "an other practice" within the meaning of the FPA).

*Noel*, 622 F.3d at 273 n.6.

An EEOC Guidance addressing the EPA's prohibition of sex-based wage discrimination, supports Plaintiffs' proposition here, as follows (eeoc.gov.laws.guidance/equal-pay-act-1963-lilly-ledbetter-fair-pay-act-2009):

> On January 29, 2009, President Obama signed the first piece of legislation of his Administration:  the Lilly Ledbetter Fair Pay Act of 2009 ("Act").  This law overturned the Supreme Court's decision in *Ledbetter v. Goodyear Tire & Rubber Co.,*

*Inc.,* 550 U.S. 618 (2007), which severely restricted the time period for filing complaints of employment discrimination concerning compensation.

The Act states the EEOC's longstanding position that each paycheck that contains discriminatory compensation is a separate violation regardless of when the discrimination began.   The Ledbetter Act recognizes the "reality of wage discrimination" and restores "bedrock principles of American law." Particularly important for the victims of discrimination, the Act contains an explicit retroactivity provision.

**People challenging a wide variety of practices that resulted in discriminatory compensation can benefit from the Act's passage.  These practices may include employer decisions about base pay or wages, job classifications, career ladder or other noncompetitive promotion denials, tenure denials, and failure to respond to requests for raises.  (Emphasis added).**

Differences in pay that occur because of sex violate the EPA and/or Title VII of the Civil Rights Act of 1964, as amended. In addition, compensation differences based on race, color, religion, national origin, age, disability, genetic information, and/or retaliation also violate laws enforced by EEOC.

### 2.      Factual Sufficiency

Defendant argues that even if those so-called "discrete" non-pay injuries alleged by Plaintiffs were timely, those claims still must be dismissed nonetheless because Plaintiffs failed to plead sufficient facts to sustain those claims.  Again, Defendant misses the mark.  The Complaint is replete with specific allegations of the so-called non-pay injuries. (See Part II *supra*).  These allegations overwhelmingly state a claim for relief which meet the well-established standard of *Iqbal* and *Twombly*.  **Although it is established that under the *Twombly and Iqbal* pleading standards, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955, those cases make it clear that a claimant does not have to "set out in detail the facts upon which he bases his claim."  *Id*.** There is no serious argument that the facts alleged in the Complaint are much more than sufficient to overcome Defendant's assertion that the so-called non-pay claims are lacking requisite specificity.

3.      **Continuing Violations**

Plaintiffs have alleged that throughout their employment by Defendant spanning from at least 2000, Defendant maintained, fostered, promoted and sustained systemic gender-based discriminatory practices by methodically and systemically discriminating against Plaintiffs (and the persons they represent) in other terms and conditions of employment on account of their sex (other than by pay disparity) through such discriminatory acts as failure to promote, disparate office assignments, unwarranted negative performance reviews, and other benefit denials.

As convincingly demonstrated above, Plaintiffs' so-called non-pay claims are not time barred by virtue of the *Ledbetter* progeny; those claims survive and are actionable from 2000. In any event, the violations alleged are not time barred in that they are alleged to have been ongoing from at least 2000, and thus, constitute continuing violations. Since these so-called non-pay acts are alleged to be part of an uninterrupted and prolonged pattern of gender discrimination, they are also timely under the continuing violation doctrine. *See, e.g., Mandel v. M & Q Packaging Corp*., 706 F.3d 157 (3d Cir. 2013). In *Mandel,* the Court found that the unlawful conduct alleged "composed a series of separate acts that collectively constitute one 'unlawful employment practice'" and "cannot be said to occur on any particular day" for purposes of triggering the statute of limitations. (*Id*. at 165); s*ee also National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 114-117 (2002); *O'Conner v. City of Newark,* 440 F.3d 125, 127 (3d Cir. 2006) (under the continuing violation doctrine, unlawful acts of discrimination "can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period" and thus will **not** be time barred). Thus, in order for a charge of discrimination to be timely, a plaintiff need only file a charge within 180/300 days of **any act** that makes up a part of the discriminatory

pattern.  Accordingly, Plaintiffs' claims are not time barred and may proceed under the continuing violation doctrine.

**D.     Plaintiffs' Claims for So-Called "Pay Based" Gender Discrimination Are Not Time Barred[3]**

**1.     Time Bar**

Plaintiffs' EPA, Title VII and Section 1983 claims have been designated by Defendant as "pay based claims".  (Defendant's Memorandum at 10).  Defendant argues that the recovery period for these equal pay claims under the EPA or Title VII or Section 1983, are subject to a two (or three) year statute of limitations and all claims of injury occurring prior to August 9, 2019, are time barred.  (Defendant's Memorandum at 11).  Again, Defendant's argument in this regard is incorrect.

The basis for Defendant's argument of a time bar of the pay disparity claims are the same as Defendant raised with respect to the so-called non pay claims discussed in Part V.C.1.  For the same reasons detailed herein at Part V.C.1. in opposition to the assertion of untimeliness of the so-called non-pay claims, Defendant's assertion of untimeliness of the pay disparity claims must be rejected.  *See Cartee-Haring v. Central Bucks School District*, C.A. No. 21-cv-02587, E.D Pa. 2022 (Baylson, J.).

In *Cartee-Haring*, plaintiff filed a Complaint **in this Judicial District** alleging that defendant school district failed to treat male and female teachers equally with regard to their levels of pay (ironically) for the period 2000 through 2022.  Defendant in *Cartee-Haring* advanced the same statute of limitations defense as Delco does here claiming that the statute of limitations should run only from 2019.  In granting a motion for certification of a collective class of EPA

---

[3]   As noted, Defendant has not alleged that Plaintiffs' "pay based claims" must be dismissed for factual insufficiency.

claimants, Judge Baylson rejected defendant's argument that there could be no certification because the potential claims of most collective class members would be barred by the EPA's two-year statute of limitations. *Cartee-Haring, id*. at ECF No. 54 pages 13-14. Rather, Judge Baylson, relying on, among other things, *Miller v. Beneficial Mgmt. Corp*., 977 F.3d 834, 842 (3d Cir. 1992), rejected defendant's statute of limitations argument. Judge Baylson stated (*id.* ECF No.54 at 13-14) as follows:

> Violations of the Equal Pay Act are subject to a two-year statute of limitations unless the violation was willful in which case a three-year statute of limitations applies and begins to run on the date the cause of action accrues. 29 U.S.C. § 255(a).

> In employment discrimination suits, the proper focus of the statute of limitations inquiry is on the time of the *discriminatory act*, not the point at which the consequences of the act become painful. **However, if the alleged discriminatory conduct is a 'continuing violation' the statute of limitations begins to run on the date of the last occurrence of discrimination, rather than the first.** *Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 842 (3d Cir. 1992) (emphasis added). Unequal payment constitutes a continuing violation when an 'employer's continued failure to pay the member of the lower paid sex the wage rate paid to the higher paid [sex occurs]. [I]t is no defense that the unequal payments began prior to the [EPA's] statutory period.' *Id.* (quoting 29 C.F.R. § 1620.13(b)(5)."

> . . .

> Because Plaintiff established members of the collective continue to be compensated unequally **currently**, the statute of limitations applicable to the collective will begin to run on the **date of the last unequal payment made** to a female District teacher. (Emphasis added).

In arguing that the motion for collective class certification should be denied in that plaintiff's claims exceeded the EPA statute of limitations, defendant School District cited to the Pennsylvania Right to Know Law which allowed for requests for teacher salaries. *Cartee-Haring, id.* at ECF No. 30, footnote 16. Thus, defendant argued that plaintiff could have obtained knowledge of male teacher salaries had she availed herself of the Right to Know Law, or at least would have had constructive knowledge of male teacher salaries. Judge Baylson disregarded that

argument – **twice**.  In the District Court's ruling on defendant's motion to have Judge Baylson's Order certified for appeal (*Cartee-Haring, id.* at ECF No. 88), the Court reiterated that in its "certification opinion" (*Cartee-Haring, id*. at ECF No. 54) the Court "also found that Plaintiffs established they had only recently discovered the pay schedules were discriminatory", thereby again implicitly rejecting defendant's Right to Know Law argument.

Delco in its instant Motion makes the same Right to Know Law argument made by the School District in *Cartee-Haring*. (Defendant's Memorandum at 3). Given the persuasive authority of *Cartee-Haring* in this Judicial District, this same issue that Judge Baylson faced and decided, respectfully, should not have to be relitigated here so as to effect judicial efficiency and bring about a quick resolution of an issue already decided by the same Court and prevent the re-argument of issues already decided.

### 2.     Continuing Violation

Plaintiffs have alleged that throughout their employment by Defendant spanning from at least 2000, Defendant has maintained, fostered, promoted and sustained systemic gender based discriminatory practices by methodically paying wages to its non-supervisory female attorneys at rates less than the rates paid to male attorneys in the same workplace for substantially equal work for jobs the performance of which require and required equal skill, effort, and responsibility and which were performed under similar working conditions. This gender based pay disparity by Defendant **remained extant** even though the job performance of Plaintiffs and similarly situated female attorneys has been superior to or the same as their male counterparts.

As convincingly demonstrated above at Part V.C.3, Plaintiffs' so-called non-pay claims are not time barred, survive and are actionable from 2000. Similarly, Plaintiffs' so-called "pay based claims" are not time barred by virtue of the *Ledbetter* progeny; those claims survive and are actionable from 2000. The violations alleged are not time barred in that they are alleged to have

been ongoing from at least 2000, and thus, constitute continuing violations by Defendant. Since these so-called pay based acts are alleged to be part of an uninterrupted and prolonged pattern of gender discrimination, they are also timely under the continuing violation doctrine. *See, e.g., Mandel v. M & Q Packaging Corp.*, 706 F.3d 157 (3d Cir. 2013). In *Mandel,* the Court found that the unlawful conduct alleged "composed a series of separate acts that collectively constitute one 'unlawful employment practice'" and "cannot be said to occur on any particular day" for purposes of triggering the statute of limitations. (*Id*. at 165); s*ee also, National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 114-117 (2002); *O'Conner v. City of Newark,* 440 F.3d 125, 127 (3d Cir. 2006) (under the continuing violation doctrine, unlawful acts of discrimination "can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period" and thus will not be time barred). Thus, in order for a charge of discrimination to be timely, a plaintiff need only file a charge within 180/300 days of **any** act that makes up a part of the discriminatory pattern.

Accordingly, Plaintiffs' pay based claims from 2000 are not time barred and may proceed under the continuing violation doctrine.

## VI.    __CONCLUSION__

For all or any of the foregoing reasons, Defendant's Motion to Partially Dismiss the Complaint must be denied.

Respectfully submitted,

WEINSTEIN LAW FIRM, LLC

/s/ Marc E. Weinstein, Esquire
Marc E. Weinstein
Identification No. 79474
500 Office Center Drive, Suite 400
Fort Washington, PA 19034
267.513.1942 (tel)

and

PENTIMA LAW FIRM, PLLC
/s/ Vincent J. Pentima, Esquire
Identification No, 18523
507 Jennifer Drive
Dresher, PA 19025
267.670.2796 (tel)

*Counsel for Plaintiffs*

Dated:  November 22, 2022

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing *Plaintiff's Memorandum of Law In Opposition to Defendant's Motion To Dismiss* has been served upon counsel of record on the below listed date via the Court's ECF system:

>Meredith S. Dante, Esquire (PA ID No. 209119)
>Elizabeth McManus, Esquire (PA ID No. 210274)
>Ballard Spahr, LLP
>1735 Market Street, 51st Floor
>Philadelphia, PA 19103-7599
>Email: dantem@ballardspahr.com
>Email: mcmanuse@ballard spahr.com

>_s/_ Vincent J. Pentima, Esquire____
>Vincent J. Pentima (Pa. ID No. 18523)
>**PENTIMA LAW FIRM PLLC**
>507 Jennifer Drive
>Dresher, PA 19004
>Telephone: 670-2796
>Email: vjp@pentimalaw.com
>*Counsel for Plaintiffs*

Dated: November 22, 2022

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TONI LEE CAVANAGH, ESQUIRE,** | : | CIVIL ACTION |
| **DENISE McCRAE, ESQUIRE,** | : | |
| **NICHOLENA RUSHTON, ESQUIRE**, | : | NO. 2:22-cv-03174 |
| Individuals, by and on behalf of | : | |
| themselves and all persons similarly | : | |
| situated | : | COLLECTIVE AND CLASS ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| **COUNTY OF DELAWARE** | : | JURY TRIAL DEMANDED |
| | : | |
| Defendant. | : | |

**<u>ORDER</u>**

AND NOW, this _____ day of _____, 2023, after having reviewed Defendant's Motion to Dismiss and Plaintiff's Opposition thereto, and after oral argument held on _____, 2023, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss is **DENIED**.

_____
**John Milton Younge, J.**